## LON M. BARKLEY v. M. A. DUMKE ET AL.

### No. 1446.   Decided June 15, 1905.

**1.—Marital Rights—Common or Spanish Law—Putative Marriage.**

The title of the Act of January 20, 1840, indicates that the rights of married persons were to be defined by statute; and its provisions with reference to them are so inconsistent with the common law, otherwise adopted by such act, as to show an intention to maintain, in respect to marital rights, a radically different system. The rule of the Spanish law, which recognizes as belonging to the innocent putative wife, the rights and incidents of lawful marriage, though her consort had a wife living at the time, should prevail over the common law which treated such marriage as void to all intents and purposes. (P. 153.)

**2.—Same—Minor—Married Woman—Conveyance.**

A girl who had innocently contracted marriage with a man having a living wife, while ignorant of that fact and still a minor, conveyed her separate property by a deed regular in form and acknowledgment, joined in by him as her husband, but received no part of the consideration. She maintained suit annulling the marriage on discovering its invalidity. Held that she could not recover back the land from the grantee, the putative marriage removing her disability as a minor, and rendering her deed as a married woman valid. (Pp. 152, 153.)

Mrs. Dumke and her husband sued Barkley for the recovery of land. Defendant had judgment. Plaintiffs appealed and on affirmance obtained writ of error.

*Jas. R. Robinson* and *Matlock, Miller & Dycus,* for plaintiff in error. —A female minor becomes adult on her marriage. Parish v. Alston, 65 Texas, 197; Brown v. Meador, 1 Posey U. C., 286; Rev. Stats., art. 2974.

The marriage between M. A. Hardesty, now M. A. Dumke, and J. W. Wood, on January 26, 1896, was, as to said M. A. Dumke, valid; and by such marriage, the said M. A. Dumke became the de facto wife of J. W. Wood; and by joining with Wood in a conveyance of her separate property, was enabled to convey title to it. Rev. Stats., arts. 2552, 2974; Morgan v. Morgan, 21 S. W., 154; Parish v. Alston, 65 Texas, 197; Carroll v. Carroll, 20 Texas, 743; Smith v. Smith, 1 Texas, 621; Lawson v. Lawson, 69 S. W. Rep., 246.

The harsh rule of the common law whereby it is held that a marriage between two persons, one of whom is legally incompetent, is absolutely null and void, has never obtained in the civil law nor in the laws of Spain and Mexico, nor in the laws of Louisiana and Texas, which came in large part from the civil law through Spain and Mexico. In a note to Smith v. Smith, 46 Am. Dec., 133, Mr. Freeman, the able editor of that series of selected cases, said: "By the civil law of Spain, and upon which is based the law of Louisiana, and of Texas, while it formed part of Mexico, when a marriage is consummated by a man or

woman with another person, who has at the time a former husband or wife living, the innocent party to such marriage, if it was contracted in perfect good faith on his or her part, and by the deception of the other party, is entitled to all the rights of a husband or wife while the deception lasts, and the children born during this period are legitimate. Gaines v. New Orleans, 6 Wall., 642; Clendenning v. Clendenning, 3 Mart. (N. S.), 438; Hubbell v. Inkstein, 7 La. Ann., 252; Smith v. Smith, 1 Texas, 621; Lee v. Smith, 18 Texas, 141; Summerlin v. Livingston, 15 La. Ann., 519; Patton v. Cities of Philadelphia and New Orleans, 1 La. Ann., 98. Hence, the second wife, if she acted in good faith, and the first wife, are each entitled, upon the death of the husband, to one-half of the community property."

*Orrick & Terrell*, for defendants in error.—A female minor becomes an adult on her marriage, but marriage between persons incompetent to contract is not merely voidable but absolutely void and at common law a marriage to a person then having a living undivorced wife is null and void ab initio. 2 Kent, 79; 1 Bishop on Marriage and Divorce, 299; Lewis v. Ames, 44 Texas, 340; Gathings v. Williams, 5 Ired., 487; Cartwright v. McGown, 121 Ill., 388; 2 Am. St., 105; Collins v. Voorhees, 47 N. J. Eq., 315; 24 Am. St., 413; Robertson v. Cole, 12 Texas, 365; Williamson v. Parisien, 1 John. Ch., 389; Sellars v. Davis, 4 Yerger, 503; Mounier v. Coutejean, 12 So., 623; Ward v. Dailey, 23 S. E., 926; Summerlin v. Livingston, 15 La. Ann., 519; Heffner v. Heffner, 23 Pa. St., 104; see extended note 79 Am. St. Rep., 378.

If the marriage between M. A. Hardesty and J. W. Wood was void, then it could not be valid as to either as the mutuality of consent which is absolutely necessary was wanting and out of such unlawful union no valid contract could arise so as to make her a wife de facto or de jure, Wood having a de jure wife living, and her joining with Wood in the conveyance of her separate property could convey no title or divest her of any of her rights as he was not given by the mere performance of the marriage ceremony any right, nor had her disabilities been thereby removed, and any property of the wife disposed of during such unlawful relations could be recovered by the innocent wife. Sellars v. Davis, 4 Yerger, 503; see note to Smith v. Smith, 46 Am. Dec., 131; Cartwright v. McGown, 121 Ill., 388.

The pretended marriage of Alice Hardesty was absolutely null and void ab initio, and being so no emancipation from the disabilities of minority could exist. She still remained a minor in her fifteenth year. The condition precedent upon which and by which this disability could be removed having never existed, she remained as though there had been no performance of the marriage ceremony.

GAINES, CHIEF JUSTICE.—This suit was brought by defendant in error, Mrs. M. A. Dumke, joined by her husband, to recover of the plaintiff in error a certain parcel of land situate in the city of Ft. Worth. She recovered a judgment which was affirmed by the Court of Civil Appeals.

There is practically no dispute as to the facts of the case. We will

state such of them as we deem material to a determination of the controversy.

In January, 1896, Mrs. Dumke, then Miss Hardesty, and only fifteen years of age, was, with the consent of her father, regularly married to one J. W. Wood, who had been previously married, and whose wife was at that time living and undivorced. Miss Hardesty did not then know that he was a married man, and was therefore innocent of any wrong in entering into the marriage relation with him. On March 31, 1896, Wood and the defendant in error, as husband and wife, executed to plaintiff in error a deed purporting to convey to him the property in controversy, which was duly signed and acknowledged as required by our statutes for the conveyance of the property of married women. The consideration was in part paid at the time of the transaction, and the deferred payment was thereafter discharged. No part of the consideration or its proceeds came to the hands of Mrs. Dumke. The plaintiff in error at the time of the transaction believed that she was the lawful wife of Wood. Neither had the defendant in error up to this time discovered the fraud which had been practiced upon her by her supposed husband. In November of the same year the defendant in error, now Mrs. Dumke, brought suit against Wood, and obtained a decree annulling the marriage. She subsequently married her present husband.

Perhaps under the strict rules of common law, we should be constrained to rule that the marriage of defendant in error with Wood was absolutely void to all intents and purposes and therefore to hold the conveyance from Wood and the putative wife also void. But we are of the opinion that the common law rule does not apply to this case. The title of the act of January 20, 1840, entitled "An Act to adopt the common law of England, to repeal certain Mexican laws, and to regulate the marital rights of parties," indicates that the rights of married persons were to be defined by statute and not to be governed by the rules of the common law. The provisions of the act with reference to married persons are so inconsistent with the rules of the common law as to show an intention to maintain in reference to marital rights a radically different system. The fact that these provisions were incorporated in the act which adopted the common law is of itself significant of the purpose of the Legislature, not to apply the rules of the common law as to the property rights of husband and wife. In this connection it is notable also that the statutory rules which were adopted are taken in the main from the Spanish law which then prevailed in the republic. So striking is this fact as to justify Chief Justice Hemphill in saying in Burr v. Wilson (18 Texas, 370): "Our laws on marital rights are in substance but a continuation of the rules of Spanish jurisprudence on the same subject matter;" and again in Bradshaw v. Mayfield (18 Texas, 29): "But the common law is not and never has been of force in this state on the subject of marital rights." The rule of the Spanish law with reference to such marriages as that which took place between Wood and Miss Hardesty is thus expressed by the same eminent judge in Lee v. Smith (18 Texas, 142): "In Spanish law, such marriage is designated as putative, and the consort who enters into such matrimony ignorant that her partner has a wife or

husband living, is in law not only innocent of crime, but has all the rights, incidents and privileges pertaining to lawful marriage, and these are continued as long as there is ignorance of the former, or of impediment to the second marriage. This putative was converted into· a real marriage after the removal of the impediment by the divorce obtained at the instance of the first wife;" and is well established by prior and subsequent decisions of this court, at least in so far as it recognizes the right of the innocent wife to one-half of the property acquired by either of the supposed spouses during the existence of the putative marriage. (Smith v. Smith, 1 Texas, 621; Carroll v. Carroll, 20 Texas, 731; Lee v. Smith, 18 Texas, 142.) The rule, however, as applied to persons who have married in this state or have immigrated to the state since the passage of the act of January 20, 1840, has never so far as we are aware been announced in any opinion of this court. In Routh v. Routh (57 Texas, 589), in which the opinion was by the Commission of Appeals, the question, as we understand it, was expressly left open—though in an individual opinion, Judge Bonner announces his conclusion to be, that the innocent putative wife was entitled to one-half of the property acquired during the continuance of the supposed marriage. In Morgan v. Morgan (1 Texas Civ. App., 315) the Court of Civil Appeals of the Second District, in an able opinion by Judge Head, announces the same doctrine; but that case never came to this court. So in Lawson v. Lawson (30 Texas Civ. App., 43), the Court of Civil Appeals of the First District follow the rule announced in Morgan v. Morgan. The opinion there delivered was by Judge Gill and ably sustains the doctrine. In that case a writ of error was applied for and was refused by this court.

Therefore we think it should be taken as the settled doctrine in this state, that in case of a marriage of the character of that in controversy, the putative wife, so long as she acts innocently, has as to the property acquired during that time the rights of a lawful wife. If as a *de facto* wife she have the rights of a lawful spouse, we think it follows as a necessary corollary that she has corresponding obligations and that her status becomes that of a lawful married woman. Since under our statutes, the marriage of an infant female removes her disability of minority, we are of the opinion that upon the marriage of the defendant in error with Wood, in ignorance of the fact that he was then a married man, she became empowered with the consent of her supposed husband to convey her separate property. The conveyance in question having been executed by the supposed husband and wife in conformity to all the requisites of our statutes for the conveyance of the property of married women, we conclude that it passed the absolute title to the land in controversy to the plaintiff in error.

We would not be understood as saying that the rules of the common law as to husband and wife apply in no case under our system. They have been frequently applied in divers instances in the decisions of our courts. What we do hold is that the common law as to the consequences of a void marriage does not apply in this case.

The judgment of the Court of Civil Appeals and that of the District Court are reversed and judgment is here rendered for the plaintiff in error.     *Reversed and rendered.*